Entered: March 23rd, 2021
Signed: March 23rd, 2021

**SO ORDERED**



**LORI S. SIMPSON**
**U.S. BANKRUPTCY JUDGE**

<br>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | |
|---|---|
| In re: | |
| **ROCK CREEK BAPTIST CHURCH OF THE DISTRICT OF COLUMBIA** | **Case No. 19-16565-LSS** |
| Debtors. | **Chapter 11** |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND**
**ORDER UNDER 11 U.S.C. § 1129(a) AND FED. R. BANKR. P. 3020**
**CONFIRMING THE DEBTOR'S PLAN OF REORGANIZATION**

WHEREAS Rock Creek Baptist Church of the District of Columbia (the "Debtor"), the debtor and debtor in possession herein, (the "Debtor"), has proposed and filed with the United States Bankruptcy Court for the District of Maryland, (the "Court") (i) the Debtor's Fourth Amended Plan of Reorganization dated March 22, 2021 (the "Plan"[1]); (ii) the Third Amended

---

[1] Replacing and superseding all prior plans filed with this Court by the Debtor.  Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Plan.

Disclosure Statement in Connection with Debtor's Third Amended Chapter 11 Plan of

Reorganization [Docket No. 189] (the "Disclosure Statement"); the Amended Agreed Form of

Supplemental Disclosure and Notice in Connection with Solicitation of Competing Plans of

Reorganization (the "Supplemental Disclosure") [Docket No. 278]; and

WHEREAS, on October 7, 2020, this Court entered the Order Approving Competing

Disclosure Statements [Docket No. 202]; and on February 23, 2021, the order [Docket No. 280]

scheduling a hearing on confirmation of the Plan for March 23, 2021 at 10:00 a.m. (the

"Confirmation Hearing") and directed the Debtor to distribute the Plan, Supplemental

Disclosure, and a ballot conforming to the Agreed Form of Joint Ballot in Connection with

Solicitation of Competing Plans of Reorganization [Docket No. 217] to all creditors and parties

in interest; and

WHEREAS due notice of the Confirmation Hearing has been given to Holders of Claims

against the Debtor and other parties in interest in compliance with the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Order (I) Setting

Hearing on Confirmation of Competing Plans of Reorganization, (II) Fixing Time for Filing

Acceptances or Rejections of Competing Plans of Reorganization, Combined with Notice

Thereof, and (III) Approving Form of Joint Ballot [Docket No. 280], Order Approving

Competing Disclosure Statements, by the mailing of the Plan, Disclosure Statement, and the

Order Approving Competing Disclosure Statements; and

WHEREAS such notice is sufficient under the circumstances and no further notice is

required; and

_____

2

WHEREAS ballots for voting on the Plan (the "Ballot") have been duly transmitted to the Holders of Impaired Claims in compliance with title 11 of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and the Order Approving Competing Disclosure Statements; and

WHEREAS the Debtor filed a Tally of Ballots (the "Tally of Ballots") [Docket No. 295] demonstrating acceptance of the Plan by all impaired classes that cast a ballot under the Plan with the exception of Ministry Partners Investment Company, LLC ("Ministry Partners"), which has now withdrawn its Second Amended Plan of Reorganization for Rock Creek Baptist Church of the District of Columbia [Docket No. 185] and agreed to the terms of the Debtor's Plan based upon the revisions to the treatment of Ministry Partner's reflected in the Plan, the terms of such agreed treatment announced in open court at the Confirmation Hearing, and the Debtor's Pastor, Reverend Dr. Jeffrey Mitchell, Sr.'s confirmation of the acceptance of such terms by the Debtor and the Debtor's reaffirmation of all existing default rights under the Ministry Partners' loan documents, including but not limited to Ministry Partners' right to seek the appointment of a receiver in the event of a default that is not cured within the time period set forth in Section 5.02(4) of the Plan, at the Confirmation Hearing; and

WHEREAS Exhibit A hereto is the Amended and Restated Purchase and Sale Agreement, which is attached hereto and incorporated herein and is an essential portion of the Plan substantially in the form attached hereto.

NOW, THEREFORE, based upon the Court's consideration of the entire record of these Chapter 11 Cases, including (A) the Disclosure Statement, the Plan, and the Tally of Ballots, (B) the Hearing Notice Certificate, and (C) the proffers and evidence presented at the Confirmation Hearing; and the Court having found the Disclosure Statement shall be approved and the Plan confirmed as reflected by the Court's rulings made herein and at the Confirmation Hearing; and

after due deliberation and sufficient cause appearing therefor, the Court hereby **FINDS, DETERMINES, AND CONCLUDES** that:

## General Findings

A.    <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>. The Court has jurisdiction over the Debtor's Chapter 11 Case pursuant to 28 U.S.C. § 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.  The Debtor is an eligible debtor under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is the plan proponent in accordance with section 1121(a) of the Bankruptcy Code.

## Findings Regarding the Plan

C.    <u>Classification of Claims and Interests</u>.  The Plan properly classifies Claims and Interests, and complies with the requirements of Section 1122 of the Bankruptcy Code.

D.    <u>Contents of Plan</u>.  The Plan satisfies all applicable requirements of Section 1123 of the Bankruptcy Code.

E.      <u>Plan's Compliance with the Bankruptcy Code</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thus satisfying the requirements of Section 1129(a)(1) of the Bankruptcy Code.

F.      <u>Proponent's Compliance with the Bankruptcy Code</u>.  The Debtor has complied with all applicable provisions of the Bankruptcy Code, thus satisfying the requirements of Section 1129(a)(2) of the Bankruptcy Code.

G.      <u>Good Faith</u>.  The Plan has been proposed in good faith, and not by any means forbidden by law, thus satisfying the requirements of Section 1129(a)(3) of the Bankruptcy Code.  The Debtor is entitled to a presumption of good faith pursuant to Bankruptcy Rule 3020(b)(2).

H.      <u>Payment for Services or Costs and Expenses</u>.  Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with these Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying the requirements of Section 1129(a)(4) of the Bankruptcy Code and the legal Professionals have agreed to received disbursements over time, *pro rata* in accordance with their allowed claims.

I.      <u>Directors and Officers</u>.  The Plan provides for Janet Nesse to serve as disbursing agent (the "Disbursing Agent") under the Plan and sets forth her compensation, thereby satisfying the requirements of Section 1129(a)(5) of the Bankruptcy Code.

J.      <u>No Rate Changes</u>.  After confirmation of the Plan, the Debtor's business will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission.  Section 1129(a)(6) of the Bankruptcy Code is inapplicable.

K.    <u>Best Interests</u>.  Each Holder of an impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors' estates were liquidated under Chapter 7 of the Bankruptcy Code on such date.  The Plan satisfies the requirements of Section 1129(a)(7) of the Bankruptcy Code.

L.    <u>Acceptance of Plan</u>.  All impaired Classes of Claims have accepted the Fourth Amended Plan, thus satisfying the requirements of Section 1129(a)(8) as to all impaired Classes of Claims.

M.    <u>Treatment of Administrative Expense Claims and Priority Tax Claims and Priority Claims</u>.  The treatment of Allowed Administrative Expense Claims, Priority Claims, and Priority Tax Claims under the Plan satisfies the requirements of Section 1129(a)(9) of the Bankruptcy Code, as counsel have agreed to receive their payments of Allowed Fees over a period of time beyond the Effective Date and subject to the carve out provided for in the Plan

N.    <u>Impaired Accepting Class</u>.  At least one Class of Claims that is impaired under the Plan has accepted the Plan.  The Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code.

O.    <u>Feasibility</u>.  The Plan proposes the reorganization and continued operation of the Debtor and satisfies the feasibility requirement of Section 1129(a)(11) of the Bankruptcy Code.

P.    <u>Payment of Fees</u>.  The Plan provides that on the Effective Date, and thereafter as may be required, the Debtors and/or the Disbursing Agent shall pay all fees payable

6

pursuant to section 1930 of title 28 of the United States Code.  The Plan satisfies the

requirements of Section 1129(a)(12) of the Bankruptcy Code.

        Q.     <u>Continuation of Retiree Benefits</u>.  The Debtor does not have a retirement

Plan. Section 1129(a)(13) of the Bankruptcy Code is inapplicable.

        R.     <u>No Domestic Support Obligations</u>.  The Debtor is not an individual.

Section 1129(a)(14) of the Bankruptcy Code is inapplicable.

        S.     <u>Post-petition wages</u>.  The Debtor is not an individual.  Section 1129(a)(15)

of the Bankruptcy Code is inapplicable.

        T.     <u>No Applicable Non-Bankruptcy Law Regarding Transfers.</u>  The Debtor is

a not for-profit entity and all transfers are in accordance with applicable non-bankruptcy law.

Accordingly, Section 1129(a)(16) of the Bankruptcy Code is satisfied.

        U.     <u>Plan Modifications</u>. The Plan (including all modifications thereof) is dated

and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of

the Disclosure Statement with the clerk of the Bankruptcy Court satisfies Bankruptcy Rule

3016(b). Any modifications to the Plan, as set forth herein, are not materially adverse

modifications and are permissible under Bankruptcy Code section 1127(a) and (c). Specifically,

the Plan, including the modifications, complies with Bankruptcy Code sections 1122, 1123 and

1125. Any modifications to the Plan do not adversely change the treatment of the Claim of any

Creditor and would not cause any Creditor to reconsider its acceptance of the Plan.

Notwithstanding the modifications to the Plan, the Disclosure Statement contains adequate

information concerning the Plan sufficient to allow a reasonable, hypothetical creditor to make

an informed judgment regarding the Plan.

V.     Voting.  Votes to accept the Plan were solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of the United States Bankruptcy Court for the Maryland (the "Local Rules"), and applicable non-bankruptcy law.

W.     Solicitation.  The Plan, the Disclosure Statement, the Supplemental Disclosure, the Ballots, and the Order Approving Competing Disclosure Statements, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Disclosure Statement Approval Order.  The transmittal and service of the Plan, the Disclosure Statement, the Ballots, and the Order Approving Competing Disclosure Statements (all of the foregoing, the "Solicitation") was timely, adequate, and sufficient under the circumstances.  The Solicitation of votes on the Plan complied with the Order Approving Competing Disclosure Statements, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws, and regulations.  In connection therewith, the Debtor, and any and all attorneys and advisors of the foregoing are entitled to the protection of section 1125(e) of the Bankruptcy Code, as stated in the Plan.

X.     Notice.  The Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) have been given due, proper, timely, and adequate notice in accordance with the Disclosure Statement Approval Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law, and such parties have had an opportunity to

8

appear and be heard with respect thereto.  No other or further notice is required.  The Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, the Disclosure Statement Approval Order, and all other applicable law, in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Plan.

Y.    <u>Conclusion</u>.  Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.    <u>Confirmation of the Plan</u>.  The Plan and each of its provisions shall be, and hereby are, approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into, and are an integral part of this Confirmation Order.

3.    <u>Binding Effect</u>.  On the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, all Holders of Claims and Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the Holders of such Claims or Interests have accepted the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, any other party in interest in these Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

4.    <u>Vesting of Assets</u>.  Except as otherwise provided in the Plan, as of the Effective Date, pursuant to the provisions of Bankruptcy Code section 1141(b) and (c), all Assets shall re-vest in the Debtor free and clear of all Claims, liens, encumbrances, charges, and other interests, except as otherwise expressly provided or preserved in the Plan or this Confirmation Order, and subject to the terms and conditions of the Plan and this Confirmation Order.  All payments, other than monthly payments to MPIC,  from sources other than operations of the Debtor and all payments from RCBCRM to the Debtor shall be made to the Disbursing Agent for transmittal in accordance with the Plan

5.    <u>Implementation of the Plan</u>.  The Debtor and Disbursing Agent shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan,  On the Effective Date, the Debtor is authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases and other agreements in the name of and on behalf of the Debtor. To the extent that it prevents implementation of any such action described above, the automatic stay is hereby modified to allow such action.

6.    <u>Compromise of Controversies</u>.  In consideration for the distributions and other benefits, including releases, provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan. Consideration for all such compromises, settlements and releases is adequate and the entry of this Confirmation Order constitutes approval of such compromises and settlements under Bankruptcy Rule 9019, subject to the provisions of the Plan.

7.      <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.  Except as otherwise provided in any contract, instrument, release, indenture, the Plan, or other agreement or document entered into in connection with the Plan, as of the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party, and which have not been previously assumed and assigned, are hereby rejected as of the Effective Date.

8.      <u>Conditions to Effective Date</u>.  The Plan shall not become effective unless and until the conditions set forth in Section 8.08 of the Plan and in this Confirmation Order have been satisfied or waived the Debtor, RCBCRM and Ministry Partners.

9.      <u>Injunction</u>.  **Unless otherwise provided herein or in the Plan, all injunctions or stays provided for in the Case pursuant to §§ 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.  On the Effective Date, all claims asserted against the Debtors by Creditors in each class included the Plan, shall be, to the fullest extent permitted by § 1141 of the Bankruptcy Code, satisfied, settled, released and discharged as against the Debtor, for any debt that arose before the Confirmation Date and any debt of a kind specified in §§ 502 and 503 of the Bankruptcy Code and all claims of any nature, whether or not (i) a proof of claim based on such debt or obligation is filed or deemed filed under § 501 of the Bankruptcy Code, (ii) such Claim is allowed under § 502 of the Bankruptcy Code, or (iii) the holder of such Claim has accepted the Plan.  Accordingly, upon the entry of the Discharge, all persons or entities which could have been claimants, and all actual claimants listed herein, shall be precluded from asserting any Claim against Debtor, based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, and the Confirmation Order shall permanently enjoin all such person or**

**entities, and their successors and assigns, from enforcing or seeking to enforce any such Claim against the Debtor, except to the extent such Creditors are entitled to payment under the Plan.** For the avoidance of doubt, and notwithstanding any other provision contained in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release or enjoin the prosecution of any claims or Causes of Action by the Debtor, the Disbursing Agent or the Estate.

10.     <u>Releases</u>.  Any Entity that is entitled to receive any distribution under the Plan, or whose Lien is extinguished or modified pursuant to the Plan, shall execute and deliver such documents and instruments as are necessary to release or modify of record any Lien, to the extent such Lien is extinguished or modified pursuant to the Plan.

11.     <u>Payment of Statutory Fees</u>.  All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date and thereafter as may be required.

12.     <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>.  Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors, as applicable, pursuant to the Plan and this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by

12

the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

13.    <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to Section VIII of the Plan and sections 105 and 1142 of the Bankruptcy Code, this Court shall retain jurisdiction over all matters arising in, arising under, and related to these Chapter 11 Cases to the fullest extent allowed by law.

14.    <u>Exemption from Certain Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, all transactions, and the delivery and recordation of any instrument, under, in furtherance of, or in connection with the Plan shall not be subject to any stamp tax, real estate transfer tax or similar transfer fee or tax.  Those transaction's include (i) the recordation of any deeds or other documents concerning the sale of the Ritchie Marlboro Property to RCBCRM by the Debtor, and (ii) the recordation of any mortgage, deed of trust or similar document concerning the lien being granted the Class A members by the Debtor.

15.    <u>Modifications</u>.  The Plan may be amended, modified, or supplemented by the Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by the Plan, and this Confirmation Order.  In addition, after the Plan Confirmation Date, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  Further, prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Court.

16.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights, duties, and

obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflict of laws thereof.

17.    <u>Applicable Non-bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

18.    <u>Notice.</u>  The Debtor shall mail this Confirmation Order together with Notice of the Occurrence of the Effective Date on the Effective Date to all creditors and parties-in-interest in this Case.

19.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

**END OF ORDER**

## AMENDED AND RESTATED AGREEMENT OF SALE

**THIS AMENDED AND RESTATED AGREEMENT OF SALE** (the "**Agreement**") is made as of March 23, 2021 by and between **RCBCRM, LLC, Maryland limited liability company or its assign** (the "**Purchaser**") and **Rock Creek Baptist Church, a DC religious corporation** (the "**Seller**").

Explanatory Statement

A.      Seller and Purchaser are parties to a certain Agreement of Sale with an Effective Date of July 6, 2020 (as amended from time to time the "Original Agreement"), for the purchase and sale of real property in Prince George's County, Maryland.

B.      Seller and Purchaser hereby desire to amend and restate the Original Agreement in its entirety to reflect various changes, all as further provided herein.

NOW THEREFORE, in consideration of the mutual promises of the parties hereto, made one to another, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Original Agreement is hereby amended and restated as follows:

## AMENDED AND RESTATED AGREEMENT OF SALE

**THIS AMENDED AND RESTATED AGREEMENT OF SALE** (the "**Agreement**") is made, delivered and shall be considered effective as March 23, 2021 (the "**A&R Date**"; the Effective Date of this Agreement shall continue to be July 6, 2020 as provided in the Original Agreement) by and between **RCBCRM, LLC, Maryland limited liability company or its assign** (the "**Purchaser**") and **Rock Creek Baptist Church, a DC religious corporation** (the "**Seller**").

BACKGROUND:

A.      On May 14, 2019 (the "**Petition Date**"), the Seller filed a Voluntary Petition for relief pursuant to Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland, Greenbelt Division ("**Bankruptcy Court**"), Case No. 19-16565-LSS (the "**Bankruptcy Case**").

B.      The Seller has remained in possession of its property and continues to manage its financial affairs as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.     The Seller's primary business consists of providing religious and spiritual services to its congregation for the last 147 years.   The Seller also operates its church and a school at a property in Clinton Maryland that is not the subject of this Agreement.

D.     The Seller has determined that it is in the best interests of its creditors and its Bankruptcy Estate to sell that certain parcel of land containing approximately 77.69 acres owned by Seller and located in Prince George's County, Maryland, more commonly referred to as 2505 Ritchie Marlboro Road, Upper Marlboro, Maryland, 20772, being currently designated on Tax Map 83, Grid B2 as Parcel 0016, all as more particularly outlined on **Exhibit A** attached hereto and made a part hereof together with all of the rights and appurtenances, advantages and privileges pertaining thereto, including any right, title and interest of Seller in and to all existing improvements, adjacent streets, alleys, or rights of way, and all easements, licenses, and privileges belonging to or appurtenant thereto, and all surface and ground minerals, gas and oil rights thereon contained, all trees and vegetation growing thereon and all sewer and water lines constructed thereon, all of which are hereafter collectively referred to as the "**Property**".

E.     Approval of the Bankruptcy Court is required as a condition to Seller's sale of the Property and, subject to the approval of the Bankruptcy Court, the Seller is prepared to sell, transfer and convey all of its right, title and interest in and to the Property to Buyer, and Buyer is prepared to purchase and accept the Property, from Seller, all for the Purchase Price (defined below) and upon the other terms and conditions hereinafter set forth.

**NOW, THEREFORE**, in consideration of the deposit made by Purchaser as hereinafter set forth, the mutual covenants and agreements contained herein and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**1.     Sale And Purchase Of The Property**.  Seller agrees to sell and Purchaser agrees to purchase from the Seller, upon the terms and conditions contained in this Agreement, the Property.

**2.     Purchase Price**.  For so long as the two (2) Additional Cash Payments provided in paragraph 2.iv. also become applicable, the total purchase price for the Property (the "**Purchase Price**") shall be **Three Million Dollars (3,000,000.00).**  The Purchase Price is payable as follows:

**i.**     Within ten (10) Business Days of the Effective Date, the Purchaser will deliver to Capitol Title, LLC, 2191 Defense Highway, Suite 222, Crofton, MD 21114 (410) 721-4542 (the "**Title Company**") a deposit (the "**Deposit**") in the sum of **Four Hundred Fifty Thousand Dollars ($450,000.00)**.

    ii. To the extent this Agreement requires the return of the Deposit to the Purchaser, the Title Company shall be required to return the Deposit.

    iii. On the Closing Date, the Purchaser shall pay to the Title Company (hereafter defined) the total sum of Seven Hundred Thousand Dollars ($700,000.00) (the "**Downpayment**") after credit for the Deposit. The net proceeds of the Downpayment payable to or as directed by the Seller shall be paid to the Seller by the Title Company upon recordation of the deed of conveyance from the Seller to the Purchaser which shall occur no later than the first Business Day after the Closing Date.

    iv. If Purchaser has not previously sold the entire Property (by closing) to a third-party purchaser, the Purchaser shall, at the option of the Seller and as more fully set forth in the Operating Agreement, pay Seller the sum of One Million One Hundred Fifty Thousand Dollars ($1,150,000.00) (each an "**Additional Cash Payment**") at each of the fourth (4th) and fifth (5th) anniversaries after Closing (if applicable) for an additional possible sum of up to Two Million Three Hundred Thousand Dollars ($2,300,000.00) of total Additional Cash Payments. In the event not every Additional Cash Payment is required to be made, the total Purchase Price for the  Property shall become less than **Three Million Dollars (3,000,000.00)** (as the case may be applicable). To the extent there is any contradiction or discrepancy between the terms of this Agreement and the Purchaser's Operating Agreement with respect to the Additional Cash Payments, the terms of Purchaser's Operating Agreement shall control.

    **3.** **Access For Study**. During the period commencing on the Effective Date and terminating at 6:00 p.m. Eastern Standard time on Friday, February 19, 2021 (the "**Study Period**"), the Purchaser and its authorized agents shall have the right to enter upon the Property to cause such tests and studies as Purchaser shall deem advisable, at Purchaser's sole discretion and expense, including, but not limited to, soil borings, engineering, and/or topographical tests or studies, and economic and marketing feasibility studies. The parties acknowledge that a state of emergency and catastrophic health emergency was proclaimed in Maryland on March 5, 2020, and the state of emergency and catastrophic health emergency still exists, due to the presence of COVID-19 (a respiratory disease). Notwithstanding the foregoing ninety day Study Period, Purchaser shall have the right to extend the Study Period, in its sole and absolute discretion, for up to two (2) separate periods of forty-five (45) days each (each an "**Extension Period**") by tendering to the Title Company an increase to the Deposit in the sum of Twenty-Five Thousand Dollars ($25,000.00) for each Extension Period (each an "**Extension Deposit**"). Note, the parties agree that the Purchaser timely provided Extension Deposits to the Title Company, and that the Study Period ended as of March 11, 2021 at which time the Agreement was in full force and effect, with no defaults on the part of either party.

Each Extension Deposit, if made, shall become a part of the Deposit. Each Extension Deposit shall be made on or before the then applicable expiration deadline for the Study Period. The Purchaser shall also have a right to communicate with all federal, state and county governmental or quasi-governmental authorities as well as any engineers or other professionals of the Seller. In order to assist the Purchaser in its investigations, the Seller agrees to provide Purchaser within five (5) days after the Effective Date (at no cost to Purchaser) with copies of each of the following relating to the Property (the "**Feasibility Materials**") to the extent available and in the possession of Seller or its engineers:

> i.      Existing title reports and title insurance policies.

> ii.     Existing surveys, topographic studies and deed plottings.

> iii.    Preliminary subdivision plans, recorded subdivision plats, conceptual design plans, site plans, and any and all other land use plans heretofore prepared for the Property in the possession of the Seller whether or not prepared for or by the Seller.

> iv.    Existing storm water management, storm drainage, flood plain or wetlands studies, including any submitted to Prince George's County or any State agency and copies of any correspondence from any Federal, state, or county agency relating to or commenting on same.

> v.      Soils reports.

> vi.     Copies of all existing or proposed easements.

> vii.    Zoning opinions, analysis, or reports that shall have been prepared for and on behalf of the Seller by counsel to the Seller.

> viii.   Existing permits or applications for permits relative to the Property and applications relative to the Property filed or prepared to be filed by the Seller with any Federal, state, county, municipal, or quasi-governmental authority.

> ix.    All correspondence, plans, drawings, or exhibits sent to or furnished by the Maryland State Highway Administration or any Federal or state agencies relative to the Property, the public roads adjacent or in the vicinity thereof, and entrances and ingress and egress thereto.

      **x.**      All existing sewer and water authorizations, allocations, applications, design plans, systems designation classification documents, correspondence and communications pertaining thereto.

      **xi.**      All environmental and wetland studies and, if applicable, wetland permits.

If at any time within the Study Period, the Purchaser shall determine that the Property is not suitable for purchase by the Purchaser, in the exercise of Purchaser's sole discretion, then Purchaser may, by written notice to Seller within the Study Period, elect to cancel and terminate this Agreement in which event the Deposit shall be returned to the Purchaser, and thereafter no liability shall exist between the parties pursuant to this Agreement.

Purchaser agrees to restore any change or damage to the Land caused by Purchaser or its agents and contractors and to return any materials, documents, permits or plans to the Seller, as well as any materials developed by or on behalf of the Purchaser during the Study Period ("**Purchaser's Materials**"). Purchaser shall have no obligation or liability of any kind to Seller for the completeness or the accuracy of any opinion or contents of Purchaser's Materials, as the same shall be provided to Seller without any representation or warranty of any kind. Seller agrees that it will not rely on Purchaser's Materials and will make its own investigation of the contents of the Purchaser's Materials through its own professionals.

    **4.**    <u>Title</u>. Within fifteen (15) days prior to the expiration of the Study Period, Purchaser shall obtain, at its sole cost and expense, a preliminary title commitment (the "**Title Commitment**") for the benefit of the Purchaser for the issuance of an ALTA Owners Title Insurance Policy issued by an ALTA title insurance company, a copy of which shall be furnished to the Seller. Title to the Property shall be good and marketable of record and, in fact, and shall not be subject to any easements, rights of way, restrictions, conditions, liens, encumbrances, or other matters which, in the reasonable judgment of the Purchaser, shall adversely affect the Property or the Purchaser's intended development of the Property or the construction of residential improvements thereon. In the event the Title Commitment reflects any matter which the Purchaser in its reasonable discretion deems objectionable (a "**Title Objection**"), the Purchaser shall notify the Seller of such Title Objections within seven (7) Business Days after receipt by the Purchaser of the Title Commitment. If the Purchaser requests the Seller to cure (a "**Title Cure**") a Title Objection, Seller shall within seven (7) Business Days after its receipt of notice from the Purchaser advise the Purchaser in writing whether or not the Seller agrees to act to cure Title Cure. If Seller does not provide any notice of its intent to either Title Cure or not cure then Seller shall be deemed to have elected to Title Cure. If Seller agrees to act to

cure Title Objections,, then the Seller shall promptly act at its cost and expense to Title Cure such Title Objection provided that such Title Cure can be accomplished on or before the Closing Date or such later period as to which the Purchaser may consent (the "**Cure Period**"). In the event the Seller is unable to accomplish a Title Cure within the Cure Period, the right is reserved to the Purchaser to either (i) terminate this Agreement and receive a full refund of its Deposit, (ii) enforce Purchaser's right to specific performance due to a Seller default pursuant to paragraph 11.i, or (iii) to waive the matter for which a Title Cure has been requested and proceed to Closing.  If Seller notifies Purchaser that it will not Title Cure any Title Objection as a response to Purchaser's Title Objection notice, Purchaser may elect to either (i) waive such Title Objections and proceed to Closing; or (ii) terminate this Agreement and receive a receive a refund of the Deposit.

Notwithstanding the foregoing, the Purchaser shall not be required to give any notice to the Seller for any mortgages, deeds of trust, judgments, liens, or other encumbrances created or caused to be placed as liens against the Property through the Seller (collectively a "**Seller's Lien**"), and the Seller shall pay and satisfy all Seller's Liens on the Closing Date hereunder in order that the Property may be conveyed free and clear to the Purchaser.

Any matters affecting title and which are the subject of an amendment or endorsement to the Title Commitment, arising subsequent to the effective date of the Purchaser's Title Commitment shall be subject to Purchaser's review and approval and right to demand a Title Cure in accordance with the same terms and procedures set forth above, except that the Seller shall be required to provide a Title Cure for any subsequent Title Objections.

**5.**    **Survey**. The Purchaser at Purchaser's sole option, cost, and expense may cause a boundary survey ("**Survey**") of the Property to be prepared by a licensed, registered surveyor which, if prepared, shall be currently dated; shall show among other things the location on the property of all improvements, fences, evidence of abandoned fences, easements, roads, and rights of way; shall identify all present or proposed takings, dedications, roads, easements, and rights of way, and in the case of those created by recorded instruments shall show any encroachments upon the Property; shall show thereon a legal description of the boundaries of the Property by metes and bounds or other appropriate legal description.

**6.**    **Cooperation Of Seller**.  Seller covenants and represents that Seller will join, as the title owner of the Property, in any and all applications to be signed in connection with request for rezoning or special exception for the purpose of intensifying the use permitted on the Property, change or intensification of sewer systems designation, preliminary subdivision, subdivision, WSSC, water and sewer category changes, utility permits, entrance permits, site plans and/or any other government or other authorizations the Purchaser deems necessary, in its sole

discretion, to develop the Property, and that Seller will, in good faith, assist the Purchaser in attempting to obtain said authorizations, provided that no cost or assessment in connection with same shall accrue against the Seller and that all costs of same shall be paid by the Purchaser.

     7.    **<u>Seller's Warranties and Representations</u>**.  Seller warrants and represents to the Purchaser, as of the date hereof and as of the Closing Date hereunder, that:

     **i.**    Seller is a duly formed and validly existing District of Columbia religious corporation authorized to conduct business in the State of Maryland. Seller has the legal power, right and authority to enter into this Agreement and to perform its obligations hereunder, and this Agreement has been duly authorized by all requisite parties.  On the Closing Date, Seller will cause good and marketable fee simple title to the Property to be conveyed to the Purchaser under the terms of this Agreement.

     **ii.**    Seller is not aware of any title defects affecting the Property or any condition which shall render title to the Property unmarketable or uninsurable.

     **iii.**    There are not now and there shall not be on the Closing Date any mechanics' or materialmen's liens on the Property.  On the Closing Date, there shall not be any agreement or contract to have any work performed thereon or thereat which shall be binding upon the Purchaser subsequent to the Closing Date or which may be the basis of a claim for a mechanics' or materialmen's lien upon the Property or any portion thereof subsequent to the Closing Date.

     **iv.**    There are no legal actions, suits, or other legal or administrative proceedings pending or threatened against the Property, and Seller is unaware of any facts which might result in any such action, suit or other proceeding.

     **v.**    The Seller has not made and will not make, without the Purchaser's consent, any commitments to any state, county, federal or local governmental or quasi-governmental authority, utility company, school board, church or other religious body, or any public or private organization or individual, relating to the Property, which would impose any obligation on Purchaser or its successors and assigns, after the Closing Date, to make any contribution of money or dedications of land or to construct or require the construction of any particular improvements or design of improvements or size or to construct install or maintain any improvements of a public or private nature or design of improvements or size on the Property or off-site.

     **vi.**    To the best of Seller's knowledge, there are no historical sites, buildings, or cemeteries located on or about the Property.  The Seller is not aware of

any archeological remains, artifacts, fossils, or other similar or related things on the Property which shall impede or inhibit the immediate development of the Property and the construction thereon of single family residences.

**vii.** Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby will:

**a.** To the best of the Seller's knowledge, conflict with or result in a breach of, the terms, conditions or provisions of, or constitute a default under, any agreement or instrument to which the Seller is a party;

**b.** To the best of the Seller's knowledge, violate any restriction to which the Seller is subject; or

**c.** To the best of the Seller's knowledge, constitute a violation of any applicable code, resolution, law, statute, regulation, ordinance, rule, judgment, decree or order.

**viii.** Intentionally omitted.

**ix.** There are no parties in actual or constructive possession of all or any portion of the Property and the Seller shall deliver actual possession of the Property to the Purchaser on the Closing Date free and clear of any encroachments, easements, overlaps, leases, or boundary disputes.

**x.** To the best of Seller's knowledge, none of the Property has been excavated, no land fill was deposited on or taken from the Property, no construction debris or other debris (including, without limitation, rocks, stumps, or concrete) was buried upon the Property, no hazardous materials, toxic chemicals, or similar substances, as defined by 42 U.S.C. § 6901, et seq., or 42 U.S.C. § 9601, et seq. or 33 U.S.C. § 1317(1), or 15 U.S.C. § 2606(f), or any similar provision of any applicable state, Federal, or local law (collectively "**Hazardous Wastes**"), were stored on or under or otherwise were or are in existence on or under the Property. Seller warrants that Seller has not engaged in any activities which would breach any of the foregoing warranties set forth in this paragraph.

**xi.** Seller shall, prior to the Closing Date, **(a)** pay all taxes, including interest, penalties and expenses of tax sale, and other public charges against the Property; and **(b)** not breach or violate the terms of any covenants, restrictions, easements, or agreement affecting the Property. Subsequent to the Effective Date, the Seller shall not without the prior consent of the Purchaser **(1)** grant, create, assume, suffer, or permit to exist any lien, encumbrance, leasehold interest, covenant, condition, restriction, right of way or easement upon or against the Property, **(2)** convey or agree to convey the Property or any portion thereof or

any interest therein to any other party, or **(3)** mine, grade or otherwise disturb soils within the Property.

       **xii.**   To the best of Seller's knowledge, no portion of the Property is located within an area designated as a "wetland" or "non-tidal inland wetland" by the Army Corp of Engineers or any other federal, state or local agency that will adversely impact the ability to build and sell single-family residences on each lot when the Property is subdivided.

       **xiii.**   To the best of Seller's knowledge, the Feasibility Materials are true, complete and correct.

       **xiv.**   Seller is not aware of any soil or subsurface conditions with respect to the Property which would require unusual excavation, footing or foundation costs for the construction of single family homes and/or multi-family structures.

       **xv.**   The Seller will not take or cause to be taken any action or fail to perform any obligation, which would cause any of the foregoing representations or warranties to be untrue on the Closing Date. The Seller shall immediately notify the Purchaser, in writing, of any event or condition known to the Seller which occurs which causes a change in the fact relating to, or the truth of, any of the above representations or warranties.

       **xvi.**   No action by any federal, state or municipal or other governmental department, commission, board, bureau or instrumentality is necessary to make this Agreement a valid instrument binding upon Seller in accordance with its terms (except for obtaining the Sale Order referenced in paragraph 9.i.h. below).

       **xvii.**   Seller has not received any notice of any assessments for public improvements against the Property which now is, or at the time of Closing will remain, unpaid, including, without limitation, those for construction of sewer and water lines and mains, streets, sidewalks and curbs. Seller does not know of any public improvements which have been ordered to be made and/or which have not heretofore been completed, assessed and paid for with respect to the Property.

       **xviii.** Seller agrees to renew each and every of the warranties and representations herein contained as being true and correct as of the Closing Date

   **8.**   **Condemnation**. Except as herein set forth, the risk of any permanent or temporary Taking (as hereafter defined) shall be borne by Seller until the Closing Date. If, prior to the Closing Date, Seller becomes aware of any actual or proposed Taking, Seller shall immediately give Purchaser written notice thereof and, further, shall keep Purchaser informed of and provide Purchaser an opportunity to

participate in any and all negotiations concerning such Taking and/or the potential settlement of claims relating thereto.  In the event of any such actual or proposed Taking, Purchaser shall have the right to terminate this Agreement by giving written notice to that effect to Seller within thirty (30) days after receipt of notice from the Seller.  In the alternative, if Purchaser proceeds with Closing despite such actual or proposed Taking, **(i)** the Purchase Price for the Property shall be reduced by the amount of any and all proceeds actually received by Seller at or prior to the Closing in connection with said Taking, **(ii)** Purchaser shall succeed to all rights of Seller to any and all such proceeds payable after the Closing and **(iii)** Seller shall execute and deliver such documents as Purchaser may reasonably require to evidence the assignment of all such rights to Purchaser.  For the purposes of this paragraph, the term "Taking" shall mean any condemnation or eminent domain proceeding which shall result in the loss of all or any portion of the Property but only to the extent that such loss shall adversely and materially impact upon the development of the Property by the Purchaser.

9. **Conditions Precedent**.

i. **Conditions Precedent to Purchaser's Obligations**.  The obligation of Purchaser under this Agreement to purchase the Property is subject to the fulfillment by Seller or waiver by Purchaser of the following:

**a.** Title to the Property shall be good and marketable, fee simple title as of the Closing Date, free and clear of any Title Objections made pursuant to the provisions of paragraph 4 hereof, and for which the Seller is required to cure.

**b.** Purchaser shall not have disapproved any changes in the status of title occurring subsequent to the effective date of the Title Commitment.

**c.** The representations and warranties of Seller set forth in paragraph 7 (except for 7(xiii) which shall only be renewed as of the Closing Date to the best of Seller's knowledge) shall be true and correct as of the Closing Date and the Seller shall so represent in writing on the Closing Date.  Although certain of Seller's representations, warranties and covenants are made only to the extent of Seller's knowledge or the truth and accuracy thereof as of the Effective Date, this condition precedent shall not be so limited and shall be deemed satisfied only if each of Seller's representations and warranties are true and correct on the Closing Date (except for 7(xiii) which shall only be renewed as of the Closing Date to the best of Seller's knowledge) without respect to Seller's knowledge or lack of knowledge or the change in accuracy from the Effective Date to the Closing Date.

**d.** On the Closing Date hereunder, and subject to a change in ingress and/or egress post Study Period, the Property shall have an absolute,

free, and unconditional right of ingress and egress to a publicly dedicated public road.

**e.**    The Property shall be free and clear of Hazardous Wastes.

**f.**    There shall not be in effect on the Closing Date any Federal, State, county, or municipal moratoriums upon approval of site development plans, issuance of building and development permits, or availability of sewer and water or any requirement to satisfy any "adequate public facilities" criteria or statute (collectively a "**Moratorium**").  In the event of a Moratorium, the parties agree that the Closing Date shall be extended for a period of time equal to the duration of the Moratorium but in no event in excess of twenty-four months without the consent of Purchaser and Seller.  If, upon the expiration of such period, and provided the Purchaser is unwilling to waive the benefit of this subparagraph (f), such Moratorium is still in effect, Purchaser (in its sole and absolute discretion) may terminate this Agreement in which event the Deposit shall be returned to Purchaser, and the parties shall have no further liability to each other under this Agreement.

**g.**    On the Closing Date, the Property must be delivered to the Purchaser free and clear of any violations of law or municipal ordinances or orders.

**h.**    <u>Sale Order</u>.  The obligations of Seller and Purchaser to consummate the transactions described herein shall be contingent upon entry of a final order of the Bankruptcy Court, in form and substance reasonably acceptable to Seller and Purchaser, authorizing the Seller to sell the Property to Purchaser free and clear of all liens, claims and encumbrances and in accordance with the terms, provisions, and conditions of this Agreement (the "**Sale Order**"). Seller shall diligently pursue all motions, Plan of Reorganization or other proceedings to obtain the Sale Order, at Seller's sole cost and expense.  Seller shall take no action to preclude the entry of a Sale Order unless the same is consistent with the terms of this Agreement.  Purchaser shall cause any and all members of the Purchaser (other than the Seller) to ratify the Operating Agreement at or before the Closing Date.

**i.**    <u>Purchaser's Operating Agreement</u>.  On the Closing Date, the Seller and Purchaser shall cause to be fully executed two (2) originals of the Operating Agreement for the Purchaser.  The form of the Operating Agreement is attached hereto and incorporated herein as Exhibit B.

**j.**    At Closing, there shall be no new governmental restrictions or impediments to Purchaser selling the Property or any portion thereof for construction of improvements thereon.

**k.**    Sewer and water must be available by the Washington Suburban Sanitary Commission and Prince George's County, Maryland, and shall be immediately available for installation to the Property at the Property line in sufficient size and capacity so as to service at least 250 residential housing units. On the Closing Date, there shall be no offsite easements necessary to extend sewer and water lines to the Property.  On the Closing Date, any sewer and water "deficit charges," "subdistrict fees," or any other charges over and above those normally incurred and charged in connection with the installation of water and sewer to a residential subdivision shall be paid by the Seller.  On the Closing Date, there shall be no requirement to install a pumping station either on or off the Property or to pay for the construction of any offsite improvements, including an increase in the size of lines, as a condition to obtaining water and sewer service for the Property. Notwithstanding anything to the contrary contained herein, Purchaser must satisfy itself as to this condition precedent during the Study Period as it will be deemed satisfied and waived by the Purchaser after the expiration of the Study Period.

**ii.**    In the event one or more of the provisions of paragraph 9.i. (collectively the **"Seller's Obligations"**) are not satisfied and performed on the Closing Date, there is not a default by the Seller, and such provisions have not been waived in writing by the Purchaser, then Seller shall take prompt steps at its sole expense so as to satisfy all of Seller's Obligations (a **"Cure"**).  If Seller is required to Cure in order to satisfy any of the Seller's Obligations, then the Closing Date shall be, if necessary, extended for such length of time necessary to accomplish a Cure but no longer than three (3) months after the Closing Date unless a greater period of time shall be consented to by the Purchaser (the **"Cure Period"**).  In the event that the Seller is required to Cure but has been unable to do so within the Cure Period, then the Purchaser shall have the option to either: **(1)** terminate this Agreement in which event the Purchaser shall receive a full refund of the Deposit, and thereafter no liability shall exist between the parties pursuant to this Agreement; **(2)** waive the matter for which the Cure is required and proceed to Closing; or **(3)** seek to obtain specific performance of Seller's Obligations hereunder.

**iii.**    **Conditions Precedent to Seller's Obligations**.  In addition to the entry of the Sale Order, the obligation of the Seller under this Agreement to sell the Property to the Purchaser is subject to delivery to the Title Company by Purchaser of the Downpayment less the Deposit, the Closing costs and any other monies and documents required to be paid, executed or provided by the Purchaser hereunder.

**10.**    **Time, Place, Expenses of Closing and Escrow**.

**i.**    **Closing**.

**a.**   The Closing hereunder shall take place in the offices of the Title Company on the last to occur of (i) on or before the thirtieth (30th) day following the entry of the Sale Order (so long as the conditions to Closing set forth in paragraph 9.i. are satisfied) or (ii) the thirtieth (30th) day after the expiration of the Study Period (so long as the conditions to Closing set forth in paragraph 9.i. are satisfied), as the case may be appropriate the "**Closing Date**").  In the event that the approval of this Agreement is denied by the Bankruptcy Court at any time, either party may, thereafter, by written notice to the other party, terminate this Agreement, and the parties shall have no further obligations hereunder, or either party may extend the Closing Date by an additional sixty (60) days in order to allow additional time for the Seller to obtain the Sale Order.

**b.**   On the Closing Date, the Property is to be conveyed to the Purchaser by good and sufficient special warranty deed in proper statutory form for recording duly executed and acknowledged.

**c.**   On the Closing Date, the Seller shall execute such other and further documents as may be reasonably necessary or required in order to consummate Closing in accordance with the provisions of this Agreement, including standard title company questionnaires and closing statements, and shall further execute (at no cost to Purchaser) an assignment to the Purchaser of good and marketable title to all existing or applied-for permits, allocations and authorizations pertaining to the Property in the form attached hereto as Exhibit C and incorporated herein.

**ii.**   **Adjustments**.  Taxes, general and special shall be adjusted as of the Closing Date in accordance with the information pertaining to same provided by the Treasurer of Prince George's County, Maryland, except that special assessments for improvements completed prior to the Closing Date, whether assessment therefor has been levied or not, shall be paid by the Seller or allowance made therefor at the time of Closing.  Special assessments for improvements completed or to be completed subsequent to the Closing Date are to be paid by the Purchaser.  All agricultural transfer tax or similar roll-back or reassessment taxes affecting the Property applicable as a result of the transactions contemplated by this Agreement shall be paid in full by the Purchaser at Closing.  Seller shall reasonably cooperate with any request by Purchaser to assist in minimizing agricultural transfer taxes, including a request that Seller attempt to remove the Property from its agricultural use in advance of Closing.

**iii.**   **Costs of Closing**.  All transfer and recordation charges and all recording fees shall be split equally between the Purchaser and the Seller.  Purchaser shall pay all other costs incident to Closing (except those related to clearing any encumbrances or title objections required and agreed to be paid or cleared by Seller hereunder) to include notary and conveyancing fees, title

insurance premiums, survey, lender fees and tax certificates. Seller shall pay a reasonable fee for any services provided to the Seller by the Title Company to obtain partial releases or payment of encumbrances required to be paid hereunder by the Seller. In addition, notwithstanding the foregoing or anything else in this Agreement to the contrary, neither Seller nor Purchaser shall have any obligation for the payment of transfer and recordation taxes if such taxes are exempt from payment under 11 U.S.C. § 1146(a) and Closing follows confirmation of a plan of reorganization that provides for transfer of the Property to Purchaser.

## 11. **Termination; Default; Remedies**.

   **i.** If Seller fails to consummate and perform its obligations under this Agreement which default by the Seller shall remain uncured for a period of fifteen (15) days after notice by the Purchaser to the Seller, the Purchaser may, at its option, exercise any and/or all of the following remedies: **(a)** enforce specific performance of this Agreement; **(b)** proceed to Closing without waiving any of its rights under this Agreement against the Seller as a result of such default; and/or **(c)** terminate this Agreement and receive a full refund of the Deposit and institute a suit against the Seller for monetary damages.

   **ii.** The parties acknowledge and agree that anything in this Agreement to the contrary notwithstanding, so long as all conditions precedent to Purchaser's obligation to purchase the Property have been satisfied, and Purchaser breaches any material term or provision of this Agreement or fails to complete the purchase of the Property, which default shall remain uncured for a period of fifteen (15) days after notice by the Seller to the Purchaser, and provided Seller is not in default, Seller shall be paid by the Title Company a portion of the Deposit in the sum of $50,000.00 (note, the balance of the Deposit shall be refunded to the Purchaser by the Title Company) as liquidated damages and not as a penalty which shall be Seller's sole remedy hereunder in the event of a Default by the Purchaser. Seller hereby expressly waiving any right to institute an action for specific performance or monetary damages against Purchaser. In no event shall Seller be entitled to seek or obtain any damages or other remedies of any kind as a result of Purchaser breach of any term or provision of this Agreement, including, without limitation, consequential, indirect or punitive damages from the Buyer, or any of its respective officers, directors, shareholders, members, agents, affiliates, employees, attorneys, independent contractors or other representatives. The parties agree to this provision in recognition of the fact that it would be difficult to determine with accuracy the Seller's damages in the event of a default by the Purchaser.

   **12.** **Notices**. All notices, demands and requests and other communications required or permitted hereunder shall be in writing, and shall be deemed received by the party to whom such notice is directed **(i)** if by hand-delivery, the date of delivery; **(ii)** if sent by United States mail, forty-eight (48) hours after the deposit

thereof in a regularly maintained receptacle for the United States Post Office, registered or certified mail, return receipt requested, postage prepaid; **(iii)** if sent by facsimile or e-mail (.pdf copy by e-mail is acceptable), on the date of transmission provided that the machine (in the case of a facsimile) sending any notice by facsimile must generate a confirmation of transmission contemporaneously with the sending of such notice and a copy of such notice must also be sent on the same day by one of the other means specified in this paragraph 12; or **(iv)** if sent by private overnight express carrier, such as Federal Express, on the first Business Day after the deposit of same with such private overnight express carrier sent for next Business Day delivery, addressed to the parties and their facsimile numbers as follows:

**PURCHASER:**
RCBCRM, LLC
Attention: Gregory S. Wilby
14326 Old Marlboro Pike
Upper Marlboro, Maryland 20772
Fax No.: 301-218-2208
E-mail: gwilby@chesapeakecustombuilders.net

**With a Copy to:**
Darin S. Levine, Esquire
Levine Law Group, LLC
839 Quince Orchard Blvd.
Suite M
Gaithersburg, Maryland 20878
Fax # 301-519-0997
E-mail: dlevine@levinelawgroupllc.com

**SELLER:**
Rock Creek Baptist Church
Attention: Janet Nesse, Esq.
6411 Ivy Lane
Suite 200
Greenbelt, MD 20770
Fax #:301-982-9450
E-mail: jnesse@mhlawyers.com


    **13.**   **Complete Agreement**.  This Agreement embodies the complete agreement between the parties hereto and cannot be varied or modified except by the written agreement of the parties.

14. **Parties Bound**. This Agreement shall be binding upon and inure to the benefit of Seller and Purchaser, and their respective heirs, personal representatives, successors and assigns.

15. **Survival of Representations and Warranties**. The representations, provisions and warranties set forth in this Agreement shall survive Closing hereunder and shall not be merged in the deed of conveyance.

16. **Commissions**. Each party warrants to each other that no realtor or third party has been the procuring cause of this Agreement or is entitled to the receipt of any commission or payment of money as a result of the execution of this Agreement. Each party agrees to indemnify and hold harmless the other from and against any and all loss, cost, damage or expense, including reasonable attorney fees, as a result of any claims made for a fee or commission from any party as a result of any action by one of the parties to this Agreement.

17. **Counterparts**. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

18. **Rule Against Perpetuities**. The parties agree that all obligations of the parties under this Agreement shall be performed on a date which is not in excess of forty-eight (48) months after the Effective Date.

19. **Governing Law**. This Agreement is to be governed by and construed in accordance with the laws of the State of Maryland.

20. **Binding Effect**. This Agreement shall be binding on and inure to the benefit of the parties, and each of their respective successors and assigns.

21. **Date of Performance**. If the date of any act, notice, or other matter contained within this Agreement shall fall on a Saturday, Sunday, or national holiday (the "**Performance Date**"), the Performance Date shall automatically be extended to the first date thereafter which is not a Saturday, Sunday, or national holiday. As used in this Agreement, the term "Business Day" shall mean any day which is not a Saturday, Sunday, or national holiday.

22. **Litigation**. The parties agree that in the event of any litigation between the parties pertaining to this Agreement, the party prevailing in such litigation (as determined by the Judge or tribunal hearing such litigation) shall be entitled to receive from the non-prevailing party reasonable attorney fees and costs of litigation.

23.    **Further Assurances/Fair Construction**.  The parties agree to act in good faith, and to properly and fully execute in a timely manner any and all documents necessary to carry out the terms and intent of this Agreement. The parties shall also, at all times in the future, promptly upon the request of the other, execute and deliver to the other all additional and further assurances of any nature which may be necessary to fully consummate and carry out the terms and intent of this Agreement, including without limitation executing and/or joining in any and all applications, consents and other documents necessary for Purchaser to acquire any and all rights of Seller to develop the Property. If any agreement or document requires execution by an affiliate of Seller, Seller shall cause such affiliate to execute such agreement or document.  However, nothing contained in this paragraph shall require either party to assume any liability or expense not expressly required by the terms of this Agreement.  The parties hereby agree that they have had the opportunity to be represented by counsel in connection with this transaction and that this Agreement shall be interpreted (if any interpretation be required) according to its fair meaning and shall not be construed against either party as the draftsman hereof.

24.    **Non-Foreign Affidavit**.  Seller represents and warrants to Purchaser that Seller is not a foreign person (as defined in Section 1445 (f)(3) of the Internal Revenue Code of 1954, as amended) and agrees to execute and deliver to Purchaser at closing an Affidavit confirming this representation.

25.    **Critical Area Notice:**

**NOTICE TO PURCHASER CONCERNING THE CHESAPEAKE AND ATLANTIC BAYS CRITICAL AREA.  PURCHASER IS ADVISED THAT ALL OR A PORTION OF THE LOTS MAY BE LOCATED IN THE "CRITICAL AREA" OF THE CHESAPEAKE AND ATLANTIC COASTAL BAYS, AND THAT ADDITIONAL ZONING, LAND USE, AND RESOURCE PROTECTION REGULATIONS APPLY IN THIS AREA.  THE "CRITICAL AREA" GENERALLY CONSISTS OF ALL LAND AND WATER AREAS WITHIN 1,000 FEET BEYOND THE LANDWARD BOUNDARIES OF STATE OR PRIVATE WETLANDS, THE CHESAPEAKE BAY, THE ATLANTIC COASTAL BAYS, AND ALL OF THEIR TIDAL TRIBUTARIES.  THE "CRITICAL AREA" ALSO INCLUDES THE WATERS OF AND LANDS UNDER THE CHESAPEAKE BAY, THE ATLANTIC COASTAL BAYS, AND ALL OF THEIR TIDAL TRIBUTARIES TO THE HEAD OF TIDE.  FOR INFORMATION AS TO WHETHER THE PROPERTY IS LOCATED WITHIN THE CRITICAL AREA, PURCHASER MAY CONTACT THE LOCAL DEPARTMENT OF PLANNING AND ZONING, WHICH MAINTAINS MAPS SHOWING THE EXTENT OF THE CRITICAL AREA IN THE JURISDICTION.  ALLEGANY, CARROLL, FREDERICK, GARRETT,**

**HOWARD, MONTGOMERY, AND WASHINGTON COUNTIES DO NOT
INCLUDE LAND LOCATED IN THE CRITICAL AREA.**

26.    **Miscellaneous**.  Whenever used herein and as the context so requires, the singular shall include the plural, and any gender shall include all genders and the neuter.  Captions to this Agreement are intended for the convenience of the parties only and shall not be deemed to reflect any substitutive meaning to this Agreement.

27.    **Special Clauses**.

    i.    Conflicts with the Sale Order. In the event of any material conflict or inconsistency between the provisions of this Agreement and the Sale Order, the provisions of the Sale Order shall govern and control, and the Parties shall negotiate in good faith to accommodate such material conflict or inconsistency into this Agreement.

    ii.    Jurisdiction; Venue; Waiver of Jury Trial. The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine any matter arising from or relating to the sale of the Property and the enforcement of any rights and remedies of Seller or Purchaser hereunder. Purchaser hereby consents to such jurisdiction. If the Bankruptcy Court has no jurisdiction then the parties hereby submit to the exclusive jurisdiction and venue of the United States District Court for the District of Maryland. If the United States District Court for the District of Maryland lacks jurisdiction, the parties hereby submit to the exclusive jurisdiction and venue of the Circuit Court for Prince George's County, Maryland.  The parties hereby waive all rights to a jury trial. The parties hereto acknowledge that the terms and conditions of this Agreement and the Seller's obligations hereunder expressly are subject to approval by the Bankruptcy Court pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules of Procedure.  All disputes arising under or related to this Agreement shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

28.    **Signage/ Trailer**.  At all times after the Effective Date, Purchaser shall have the right to install signage and to operate a trailer at the Property in a location mutually acceptable to the parties.

29.    **Third Party Marketing**.  Notwithstanding any of the foregoing in this Agreement, any attempt by Seller to sell, offer the Property for sale, or to otherwise market the Property, to any third party after the Effective Date, and provided the Purchaser is not in default under this Agreement, shall constitute a default by Seller.

(Signature Page Follows Next)

**IN WITNESS WHEREOF**, the parties have set their hands and seals as of the year and day below written.

**PURCHASER:**

**RCBCRM, LLC, a Maryland limited liability company**

By:_____(SEAL)
**Name:** _____
**Title:** _____

**SELLER:**

**ROCK CREEK BAPTIST CHURCH, a DC Religious corporation**

By:_____(SEAL)
**Name:** _____
**Title:** _____

**Seller acknowledges that the A&R Date of this Agreement is March __, 2021.**

**Exhibit A**
**(Description of Property)**

Address of Property:    2505 Ritchie Marlboro Road, Upper Marlboro, Maryland, 20772

Tax ID#:    15-1756428

Being the same property conveyed from Paul E. Martin and Katherine R. Martin by virtue of a Deed dated January 6, 2003 and recorded in Liber 16888 at Folio 214 among the Land Records of Prince George's County, Maryland.

**Exhibit B**
**Form of Purchaser's Operating Agreement (see attached)**

**Exhibit C**
**Form of General Assignment**
**(See Attached)**